**UNITED STATES of America, Plaintiff,**

v.

**Albert Charles ZENNI, Jr., et al., Defendants.**

**Crim. No. 79–53.**

United States District Court, E. D. Kentucky, Covington Division.

July 3, 1980.

James E. Arehart, Asst. U. S. Atty., Lexington, Ky., for plaintiff.

F. Dennis Alerding, Stephany Tsanges, Covington, Ky., Harry Hellings, Fort Wright, Ky., Jack Rubenstein, Allan Schwartz, Richard Slukich, R. Michael Murphy, Federal Public Defender, Louis DeFalaise, Thomas C. Smith, Stephen T. McMurtry, Covington, Ky., Dale Schmidt, for defendants.

BERTELSMAN, District Judge.

This prosecution for illegal bookmaking activities[1] presents a classic problem in the law of evidence, namely, whether implied assertions are hearsay. The problem was a controversial one at common law, the discussion of which has filled many pages in the treatises and learned journals.[2] Although the answer to the problem is clear under the Federal Rules of Evidence, there has been little judicial treatment of the matter, and many members of the bar are unfamiliar with the marked departure from the common law the Federal Rules have effected on this issue.

## FACTS

The relevant facts are simply stated. While conducting a search of the premises of the defendant, Ruby Humphrey, pursuant to a lawful search warrant which authorized a search for evidence of bookmaking activity, government agents answered the telephone several times. The unknown callers stated directions for the placing of bets on various sporting events. The government proposes to introduce this evidence to show that the callers believed that the premises were used in betting operations. The existence of such belief tends to prove that they were so used. The defendants object on the ground of hearsay.

## COMMON LAW BACKGROUND

At common law,[3] the hearsay rule applied "only to evidence of out-of-court statements[4] offered for the purpose of proving that the facts are as asserted in the statement."[5]

On the other hand, not all out-of-court expression is common law hearsay. For instance, an utterance offered to show the publication of a slander, or that a person

1. Eleven defendants were charged in a five-count indictment, with violations of the Travel Act, in that they conducted an illegal gambling business. In the first count, defendants were charged under 18 U.S.C. § 371 with conspiracy to (1) conduct an illegal gambling business (18 U.S.C. § 1955); (2) travel in interstate commerce to facilitate the conducting of an illegal gambling business (18 U.S.C. § 1952(a)(1)(3)) and (3) to use telephones to transmit bets and wagering information. (18 U.S.C. § 1084).

In the remaining counts defendants were charged with conducting an illegal gambling business (18 U.S.C. § 1955); using interstate facilities to promote illegal gambling (18 U.S.C. § 1952(a)(3)); traveling in interstate commerce to distribute proceeds (18 U.S.C. § 1952(a)(1)); and using telephones in interstate commerce to place bets and wagers (18 U.S.C. § 1084). The evidentiary issue is presented by a pre-trial motion.

2. See e. g., McCormick on Evidence § 250 (2d Ed. 1972) [hereinafter McCormick]; Morgan, Basic Problems of Evidence (1976); Weinstein's Evidence ¶ 801 [hereinafter Weinstein]. Falknor, The "Hear-Say" Rule as a "See-Do" Rule: Evidence of Conduct, 33 Rocky Mt.L. Rev. 133 (1961) [hereinafter Falknor] contains a particularly penetrating and succinct analysis. (See also authorities in note 15, infra.)

3. As used in this opinion the term "common law" refers primarily to case law, as distinguished from the Federal Rules of Evidence, or other evidence codes.

4. It should be noted at the outset that the word statement as used in the Federal Rules of Evidence has a more restricted meaning than as used at common law. F.R.Ev. 801(a). See further discussion below.

5. McCormick supra note 2, § 250.

was given notice of a fact, or orally entered into a contract, is not hearsay.[6]

In the instant case, the utterances of the absent declarants are not offered for the truth of the words,[7] and the mere fact that the words were uttered has no relevance of itself.[8] Rather they are offered to show the declarants' belief in a fact sought to be proved. At common law this situation occupied a controversial no-man's land. It was argued on the one hand that the out-of-court utterance was not hearsay, because the evidence was not offered for any truth stated in it, but for the truth of some other proposition inferred from it. On the other hand, it was also argued that the reasons for excluding hearsay applied, in that the evidence was being offered to show declarant's belief in the implied proposition, and he was not available to be cross-examined. Thus, the latter argument was that there existed strong policy reasons for ruling that such utterances were hearsay.

The classic case, which is discussed in virtually every textbook[9] on evidence, is *Wright v. Tatham,* 7 Adolph. & E. 313, 386, 112 Eng.Rep. 488 (Exch. Ch.1837), and 5 Cl. & F. 670, 739, 47 Rev.Rep. 136 (H.L.1838). Described as a "celebrated and hard-fought cause,"[10] *Wright v. Tatham* was a will contest, in which the will was sought to be set aside on the grounds of the incompetency of the testator at the time of its execution. The proponents of the will offered to introduce into evidence letters to the testator from certain absent individuals on various business and social matters. The purpose of the offer was to show that the writers of the letters believed the testator was able to make intelligent decisions concerning such matters, and thus was competent.

One of the illustrations advanced in the judicial opinions in *Wright v. Tatham* is perhaps even more famous than the case itself. This is Baron Parke's famous sea captain example. Is it hearsay to offer as proof of the seaworthiness of a vessel that its captain, after thoroughly inspecting it, embarked on an ocean voyage upon it with his family?

The court in *Wright v. Tatham* held that implied assertions[11] of this kind were hearsay. The rationale, as stated by Baron Parke, was as follows:

"The conclusion at which I have arrived is, that proof of a particular fact which is not of itself a matter in issue, but which is relevant only as implying a statement or opinion of a third person on the matter in issue, is inadmissible in all cases where such a statement or opinion not on oath would be of itself inadmissible; and, therefore, in this case the letters which are offered only to prove the competence of the testator, that is the truth of the implied statements therein contained, were properly rejected, as the mere statement or opinion of the writer would certainly have been inadmissible."

6. *Ibid.* at 596–97.

7. That is, the utterance, "Put $2 to win on Paul Revere in the third at Pimlico," is a direction and not an assertion of any kind, and therefore can be neither true nor false.

8. *Cf. United States v. McLennan,* 563 F.2d 943 (9th Cir. 1977), in a criminal case, the defense was advice of counsel. Statements made by counsel to the defendant were not hearsay, because it was relevant what the advice was. Of a similar nature would be a policeman's statement, "Go through the stop sign," if it were illegal to go through it unless directed by an officer. Other examples of expression admissible as non-hearsay, because they are verbal acts, relevant merely because they occurred, are "I agree" offered to show a contract was made; or "He took a bribe," offered to show a slander was published.

9. *See e. g.* Morgan, *Basic Problems of Evidence,* 227–28 (1976); 2 Wigmore *Evidence* § 267. *McCormick, supra* note 2, § 250 (2d Ed. 1972).

10. *McCormick, supra* note 2, § 250. This case "entailed no less than four separate trials, hundreds of pages of published transcript, numerous appeals, vast amounts of money, and the participation of most of England's high judiciary, before it was finally concluded in 1838." *Weinstein, supra* note 2, ¶ 801(a)[01] at 801–54.

11. The problem is the same whether the relevant assertion is implied from verbal expression, such as that of the betters in the instant case or the letter writers in *Wright,* or from conduct, as in the sea captain example. *See* F.R.Ev. 801(a); Falknor, *supra* note 2, at 134.

This was the prevailing common law view,[12] where the hearsay issue was recognized. But frequently, it was not recognized.[13] Thus, two federal appellate cases involving facts virtually identical to those in the case at bar did not even discuss the hearsay issue, although the evidence admitted in them would have been objectionable hearsay under the common law view.[14]

## THE FEDERAL RULES OF EVIDENCE

The common law rule that implied assertions were subject to hearsay treatment was criticized by respected commentators for several reasons. A leading work on the Federal Rules of Evidence, referring to the hotly debated question whether an implied assertion stands on better ground with respect to the hearsay rule than an express assertion, states:

"By the time the federal rules were drafted, a number of eminent scholars and revisers had concluded that it does. Two principal arguments were usually expressed for removing implied assertions from the scope of the hearsay rule. First, when a person acts in a way consistent with a belief but without intending by his act to communicate that belief, one of the principal reasons for the hearsay rule—to exclude declarations whose veracity cannot be tested by cross-examination—does not apply, because the declarant's sincerity is not then involved. In the second place, the underlying belief is in some cases self-verifying:

'There is frequently a guarantee of the trustworthiness of the inference to be drawn . . . because the actor has based his actions on the correctness of his belief, i. e. his actions speak louder than words.'"[15]

In a frequently cited article the following analysis appears:

12. Falknor, *supra* note 2, at 133.

13. *McCormick, supra* note 2, § 250 at 598; *Weinstein, supra* note 2, ¶ 801(a)[02] at 801–57.

14. *Reynolds v. United States*, 225 F.2d 123 (5th Cir. 1955); *Billeci v. United States*, 184 F.2d 394 (D.C.Cir.1950). *See Weinstein* ¶ 801(a)[02] at 801–57—801–58.

"But ought the hearsay rule be deemed applicable to evidence of conduct? As McCormick has observed, the problem 'has only once received any adequate discussion in any decided case,' *i. e.,* in *Wright v. Tatham*, already referred to. And even in that case the court did not pursue its inquiry beyond the point of concluding that evidence of an 'implied' assertion must necessarily be excluded wherever evidence of an 'express' assertion would be inadmissible. But as has been pointed out more than once (although I find no *judicial* recognition of the difference), the 'implied' assertion is, from the hearsay standpoint, not nearly as vulnerable as an express assertion of the fact which the evidence is offered to establish.

"This is on the assumption that the conduct was 'nonassertive;' that the passers-by had their umbrellas up for the sake of keeping dry, not for the purpose of telling anyone it was raining; that the truck driver started up for the sake of resuming his journey, not for the purpose of telling anyone that the light had changed; that the vicar wrote the letter to the testator for the purpose of settling the dispute with the latter, rather than with any idea of expressing his opinion of the testator's sanity. And in the typical 'conduct as hearsay' case this assumption will be quite justifiable.

"On this assumption, it is clear that evidence of conduct must be taken as freed from at least one of the hearsay dangers, *i. e.,* mendacity. A man does not lie to himself. Put otherwise, if in doing what he does a man has no intention of asserting the existence or non-existence of a fact, it would appear that the trustworthiness of evidence of this con-

15. *Weinstein* ¶ 801(a)[01], at 801–55. *See also* Morgan, *Hearsay*, 25 Miss.L.J. 1, 8 (1953); Maguire, *The Hearsay System: Around and Through the Thicket*, 14 Vand.L.Rev. 741 (1961); McCormick, *The Borderland of Hearsay*, 39 Yale L.J. 489 (1930); Falknor, *supra* note 2 at 133.

duct is the same whether he is an egregious liar or a paragon of veracity. Accordingly, the lack of opportunity for cross-examination in relation to his veracity or lack of it, would seem to be of no substantial importance. Accordingly, the usual judicial disposition to equate the 'implied' to the 'express' assertion is very questionable." [16]

The drafters of the Federal Rules agreed with the criticisms of the common law rule that implied assertions should be treated as hearsay and expressly abolished it.[17] They did this by providing that no oral or written expression was to be considered as hearsay, unless it was an "assertion" concerning the matter sought to be proved and that no nonverbal conduct should be considered as hearsay, unless it was intended to be an "assertion" concerning said matter.[18] The relevant provisions are:

**Rule 801.** "(a) Statement. — A *'statement'* is (1) an oral or written *assertion* or (2) nonverbal conduct of a person, if it is *intended by him as an assertion.*

\*　　\*　　\*　　\*　　\*　　\*

(c) Hearsay. 'Hearsay' is a *statement,* other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

**Rule 802.** *"Hearsay is not admissible* except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." (Emphasis added).

"Assertion" is not defined in the rules, but has the connotation of a forceful or positive declaration.[19]

The Advisory Committee note concerning this problem states:

"The definition of 'statement' assumes importance because the term is used in the definition of hearsay in subdivision (c). *The effect of the definition of 'statement' is to exclude from the operation of the hearsay rule all evidence of conduct, verbal or nonverbal, not intended as an assertion. The key to the definition is that nothing is an assertion unless intended to be one.*

"It can scarcely be doubted that an assertion made in words is intended by the declarant to be an assertion. Hence verbal assertions readily fall into the category of 'statement.' Whether nonverbal conduct should be regarded as a statement for purposes of defining hearsay requires further consideration. Some nonverbal conduct, such as the act of pointing to identify a suspect in a lineup, is clearly the equivalent of words, assertive in nature, and to be regarded as a statement. Other nonverbal conduct, however, may be offered as evidence that the person acted as he did because of his belief in the existence of the condition sought to be proved, from which belief the existence of the condition may be inferred. This sequence is, arguably, in effect an assertion of the existence of the condition and hence properly includable within the hearsay concept. *See* Morgan, "Hearsay Dangers and the Application of

---

**16.** Falknor, *supra* note 2, at 136. The context makes clear that the author would apply the same analysis "where the conduct, although 'verbal,' is relevant, not as tending to prove the truth of what was said, but circumstantially, that is, as manifesting a belief in the existence of the fact the evidence is offered to prove." *Id.* at 134.

**17.** *See Weinstein,* ¶ 801(a)[01] at 801–55—801–56; Lewis, *Federal Rules of Evidence,* ¶ 6.5 (Ill.Inst. for C.L.E.1977).

**18.** *See* the sea captain illustration discussed, *.supra.* In an unpublished ruling this court recently held admissible as non-hearsay the fact that a U.S. mining inspector ate his lunch in an area in a coal mine now alleged to have

been unsafe, and that other inspectors who observed operations prior to a disastrous explosion issued no citations, when it would have been their duty to do so, if there had been safety violations. These non-assertive acts would have been hearsay under the rule of *Wright v. Tatham* but are not hearsay under Rule 801 of the Federal Rules of Evidence, because the inspectors did not intend to make assertions under the circumstances. *Boggs v. Blue Diamond Coal Company* (E.D.Ky. No. 77–69, Pikeville Division).

**19.** Random House *Dictionary of the English Language* (1969 Ed.)

the Hearsay Concept," 62 Harv.L.Rev. 177, 214, 217 (1948), and the elaboration in Finman, "Implied Assertions as Hearsay: Some Criticisms of the Uniform Rules of Evidence," 14 Stan.L.Rev. 682 (1962). Admittedly evidence of this character is untested with respect to the perception, memory, and narration (or their equivalents) of the actor, *but the Advisory Committee is of the view that these dangers are minimal in the absence of an intent to assert and do not justify the loss of the evidence on hearsay grounds.* No class of evidence is free of the possibility of fabrication, but the likelihood is less with nonverbal than with assertive verbal conduct. The situations giving rise to the nonverbal conduct are such as virtually to eliminate questions of sincerity. Motivation, the nature of the conduct, and the presence or absence of reliance will bear heavily upon the weight to be given the evidence. Falknor, "The 'Hear-Say' Rule as a 'See-Do' Rule: Evidence of Conduct," 33 Rocky Mt.L.Rev. 133 (1961). *Similar considerations govern nonassertive verbal conduct and verbal conduct which is assertive but offered as a basis for inferring something other than the matter asserted,* also excluded from the definition of hearsay by the language of subdivision (c)." (Emphasis added).

This court, therefore, holds that, "Subdivision (a)(2) of Rule 801 removes implied assertions from the definition of statement and consequently from the operation of the hearsay rule."[20]

Applying the principles discussed above to the case at bar, this court holds that the utterances of the betters telephoning in their bets were nonassertive verbal conduct, offered as relevant for an implied assertion to be inferred from them, namely that bets could be placed at the premises being telephoned. The language is not an assertion on its face, and it is obvious these persons did not intend to make an assertion about the fact sought to be proved or anything else.[21]

As an implied assertion, the proffered evidence is expressly excluded from the operation of the hearsay rule by Rule 801 of the Federal Rules of Evidence, and the objection thereto must be overruled. An order to that effect has previously been entered.

---

**20.** *Weinstein*, ¶ 801(a)[01] at 801–56; *McCormick* § 250 at 599.

**21.** A somewhat different type of analysis would be required by words non-assertive in form, but which under the circumstances might be intended as an assertion. For example, an inspector at an airport security station might run a metal detector over a passenger and say "go on through." In the absence of the inspector, would testimony of this event be objectionable hearsay, if offered for the proposition that the passenger did not have a gun on him at that time? Although Rule 801(a) does not seem to require a preliminary determination by the trial court whether verbal conduct is intended as an assertion, it is submitted that such a determination would be required in the example given. If an assertion were intended the evidence would be excluded. If not, it would be admissible. This result is implicit in the policy of the drafters of the Federal Rules of Evidence that the touchstone for hearsay is the intention to make an assertion. *See* S. Saltzburg and K. Redden, Federal Rules of Evidence Manual 456 (2d ed. 1977).