[Cite as *State v. Humbert*, 2012-Ohio-5870.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 26420 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CRAIG L. HUMBERT | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 11 12 3282 |

DECISION AND JOURNAL ENTRY

Dated: December 12, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1} A jury convicted Craig Humbert of attacking his mother and of later violating a protection order by walking past her apartment. He has appealed. This Court affirms his convictions because they are supported by sufficient evidence and are not against the manifest weight of the evidence and his mother's testimony did not include inadmissible hearsay.

BACKGROUND

{¶2} Mr. Humbert and his mother, Victoria, had been living together for years and were in the process of moving from an apartment on Fern Street to a nearby apartment on East Avenue on Thanksgiving Day 2011. Ms. Humbert-Williams was cooking a Thanksgiving meal for her extended family at the new apartment on East Avenue when Mr. Humbert returned from watching a football game. When he arrived at the apartment, only Ms. Humbert-Williams and her six-year-old grandson were there. According to Ms. Humbert-Williams, Mr. Humbert

walked in and started yelling at her, telling her that he did not want her to move with him to the new apartment. She said that he punched her in the face with a closed fist. She got angry and started throwing the food she was cooking onto the floor. She testified that Mr. Humbert "pushed [her] on out the door and grabbed [her] by [the] neck and started choking [her] and had [her] over the banister [on the front porch]." She testified that he stopped trying to push her over the banister when her grandson yelled, "Uncle Craig. Stop, Uncle Craig." Ms. Humbert-Williams testified that Mr. Humbert let go of her, but kicked her pelvis hard before locking her and her grandson out of the apartment and leaving the scene. She used her cell phone to call police and waited with her grandson for them to arrive. The police took her to the station where she signed a witness statement and applied for a protection order against Mr. Humbert. Police later drove Ms. Humbert-Williams back to the Fern Street apartment where police arrested Mr. Humbert. Within a week, Ms. Humbert-Williams called the police again to report that she saw Mr. Humbert standing across the street from her Fern Street apartment talking to a neighbor.

{¶3} The State charged Mr. Humbert with violating a protection order and a third-degree-felony count of domestic violence enhanced by two prior convictions. One of the enhancing convictions was for domestic violence against Ms. Humbert-Williams. The second was a child endangering conviction involving his nephew, the same child who was present during the alleged Thanksgiving attack. The State also charged him with possession of a marijuana joint found with him when he was arrested, but it later dropped that charge. A jury convicted Mr. Humbert of domestic violence and violating a protection order, but found that his previous child endangering conviction did not involve a family or household member. Thus, Mr. Humbert's domestic violence conviction is a felony of the fourth degree, enhanced only by the

previous conviction for domestic violence against Ms. Humbert-Williams. The trial court sentenced him to serve fifteen months in prison. Mr. Humbert has appealed.

## SUFFICIENCY AND MANIFEST WEIGHT

**{¶4}** Mr. Humbert's first assignment of error is that the trial court incorrectly denied his motion for acquittal. Under Criminal Rule 29(A) of the Ohio Rules of Criminal Procedure, a defendant is entitled to a judgment of acquittal on a charge against him "if the evidence is insufficient to sustain a conviction . . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. *State v. Thompkins*, 78 Ohio St. 3d 380, 386 (1997); *State v. West*, 9th Dist. No. 04CA008554, 2005–Ohio–990, ¶ 33. We must determine whether, viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of Mr. Humbert's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991). Mr. Humbert has also argued that his convictions are against the manifest weight of the evidence. If a defendant argues that his convictions are against the manifest weight of the evidence, we "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction[s] must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App. 3d 339, 340 (9th Dist. 1986).

### Domestic Violence

**{¶5}** Under Section 2919.25(A) of the Ohio Revised Code, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge

of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Ms. Humbert-Williams testified that her son, Craig Humbert, punched her in the jaw with a closed fist, choked her, and kicked her in the pelvis. She said that her lip was cut, her jaw was bruised, and she had trouble walking for several weeks after the incident due to pain in her hip and pelvis. The State offered photographs taken by police officers on the night of the incident showing an injury to her face. Officers testified that, when they arrived, Ms. Humbert-Williams was sitting with her grandson in front of the apartment. She looked as though she had been crying, and officers noticed blood around her mouth and a swollen lip. Officers testified that the child was helping her move around because she was having great difficulty walking. The officers testified that they took her to the police station to fill out a statement, sign a complaint, and request a civil protection order.

{¶6} The evidence indicated that Ms. Humbert-Williams was a "[f]amily or household member" of Mr. Humbert because she is his parent with whom he resided at the time of the incident. R.C. 2919.25(F)(1)(a)(ii). Ms. Humbert-Williams testified that Mr. Humbert punched, choked, and kicked her. Viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of Mr. Humbert's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).

{¶7} Mr. Humbert has argued that his mother's testimony about the incident was "inconsistent and incapable of being believed by the jury." He has argued that Ms. Humbert-Williams admitted on cross-examination that she did not write in her statement to police that Mr. Humbert had choked her and kicked her in the pelvis. Officer Meech testified, however, that when he first arrived on the scene, Ms. Humbert-Williams told him that she could not stand up by herself because her son had kicked her. Another officer testified that Ms. Humbert-Williams

demonstrated how Mr. Humbert had bent her over the balcony with his hands at her shoulders and chest. Ms. Humbert-Williams explained that she could not breathe while her son was forcing her body backward over the railing by pushing on her neck and chest. Mr. Humbert has also argued that there was a discrepancy in Ms. Humbert-Williams' testimony about who had thrown the food to the floor during the incident. Despite the efforts of Mr. Humbert's lawyer, the trial court did not admit any evidence indicating that there was a discrepancy in what Ms. Humbert-Williams told police on the night of the incident versus her testimony at trial regarding who had thrown the food. Further, Ms. Humbert-Williams never wavered in her testimony about her son punching her in the jaw, choking her over the banister, and kicking her in the pelvis. We cannot say that the jury clearly lost its way in resolving the conflicts in the evidence and created such a manifest miscarriage of justice that the domestic violence conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App. 3d 339, 340 (9th Dist. 1986). The evidence is sufficient to support the conviction, and that conviction is not against the manifest weight of the evidence.

## Violation of a Protection Order

{¶8} Mr. Humbert was also convicted of violating a protection order. Under Section 2919.27(A)(1) of the Ohio Revised Code, "[n]o person shall recklessly violate the terms of any . . . protection order issued . . . pursuant to section 2919.26 . . . of the Revised Code[.]" "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶9} Ms. Humbert-Williams testified that she saw her son, Craig Humbert, directly across the street from her Fern Street apartment talking to a neighbor on November 30, 2011. She said that she was looking out the front window, waiting for the mailman when she saw Mr. Humbert across the street. The evidence indicated that Mr. Humbert had signed the temporary protection order that forbade him from coming within 100 yards of his mother. Officer James Alexander testified that Ms. Humbert-Williams was upset when he arrived at her Fern Street apartment on November 30. He said that he walked across the street to the home of Robert Perkins to investigate. The officer testified that he believed the distance between the two houses was 75 to 100 feet, but that it was certainly less than the 100-yard radius prohibited by the protection order. Another officer testified that, when he arrested Mr. Humbert on the charge of violating the protection order, Mr. Humbert told him that he passed his mother's apartment while walking to the corner store.

{¶10} Viewing the evidence in a light most favorable to the prosecution, it could have convinced the average finder of fact of Mr. Humbert's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991). Further, having reviewed the record, we cannot conclude that the jury clearly lost its way in resolving conflicts in the evidence and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App. 3d 339, 340 (9th Dist. 1986). The evidence established that Mr. Humbert acknowledged the protection order by signing it just days before he told police that he walked down Fern Street past his mother's apartment on his way to the store. Regardless of whether he knew that his mother was at home at that time, the evidence supported the conclusion that he was at least reckless in that regard. *See* R.C. 2901.22(C). Mr. Humbert's

conviction for violating a protection order is not against the manifest weight of the evidence. His first assignment of error is overruled.

## HEARSAY

**{¶11}** Mr. Humbert's second assignment of error is that the trial court admitted hearsay testimony from one of the State's witnesses. He has argued that his mother should not have been permitted to testify, over his objection, that, during the altercation, her grandson had said, "Uncle Craig. Stop, Uncle Craig." Mr. Humbert has argued that the statement was inadmissible hearsay "offered by the State to show that [Mr. Humbert] did, in fact, cause harm to the victim."

**{¶12}** Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). "A 'statement' is . . . an oral . . . assertion[.]" Evid. R. 801(A)(1). The Ohio Supreme Court has held that "[a]n 'assertion' for hearsay purposes 'simply means to say that something is so, e.g., that an event happened or that a condition existed.'" *State v. Carter*, 72 Ohio St. 3d 545, 549 (1995) (quoting 2 McCormick, *Evidence*, Section 246, at 98 (4th Ed. 1992)). It has also held that "a true question or inquiry" is non-hearsay by definition because it "is by its nature incapable of being proved either true or false and cannot be offered 'to prove the truth of the matter asserted[.]'" *Id.* Similarly, a command is generally also non-hearsay by definition. *See Kellough v. Ohio State Bd. of Educ.*, 10th Dist. No. 10AP-419, 2011-Ohio-431, ¶ 52; *State v. Rebuelta*, 5th Dist. No. 2006 CA 00134, 2007-Ohio-6468, ¶ 102 (Hoffman, J., concurring).

**{¶13}** "Ohio has implicitly endorsed" the "predominate position in interpreting Federal Rule 801(c)," that is, the modern "'assertion-oriented' approach to the admissibility of indirect or implied assertions of beliefs[.]" Glen Weissenberger, *Ohio Evidence Treatise*, Section 801.6, at 22, 24 (2011); *see also*, 5 Wigmore, *Evidence*, Section 1362 n.1 (Chadbourn Rev. 1974)

(discussing history of the treatment of non-assertive conduct and emergence of the modern approach). Just as non-verbal conduct is a "statement" as defined by Evidence Rule 801(A) only if it was "intended by the [declarant] as an assertion," an utterance including an unintended "implied assertion" is not a "statement" under the rule and, therefore, is not hearsay by definition. Evid. R. 801(A); Weissenberger at 22, Section 801.6 (citing *United States v. Zenni*, 492 F. Supp. 464 (E.D. Ky. 1980) (holding that "utterances of . . . [bettors] telephoning in their bets were nonassertive verbal conduct, offered as relevant for an implied assertion to be inferred from them, namely that bets could be placed at the premises being telephoned.") (*Zenni*, 492 F. Supp. at 469).

{¶14} The hearsay rule is generally aimed at excluding out-of-court "assertions offered testimonially" because they are deemed "not sufficiently trustworthy to be fit to be considered by the tribunal unless and until they have been put to the fire of cross-examination, so that error arising 'from a corrupt desire and intention to pervert the truth,' as well as from deficiencies in observation, recollection and expression, may be exposed." 5 Wigmore, *Evidence*, Section 1362 n.1, at 4-5 (Chadbourn Rev. 1974) (quoting Falknor, *Silence as Hearsay*, 89 U. Pa. L. Rev. 192, 194-196 (1940)). Thus, the exceptions to the hearsay rule are largely based on "circumstantial guarant[ies] of trustworthiness surrounding the hearsay declaration that tend[ ] to assure truthfulness of the hearsay testimony despite the absence of the oath and cross-examination." 1980 Staff Note, Evid. R. 803. In the absence of a declarant's intent to assert that something is so, the "minimal" "dangers" associated with the untested nature of "the perception, memory, and narration (or their equivalents) of the [declarant]" "do not justify the loss of the evidence on hearsay grounds." 1972 Advisory Committee Note, Fed. R. Evid. 801(a) (discussing nonverbal conduct and noting that "[s]imilar considerations govern nonassertive verbal conduct").

**{¶15}** In this case, the contested utterance as described by the witness is similar to the non-verbal act of physically intervening in an attempt to stop a fight. Although in the context of Ms. Humbert-Williams's testimony, the child's statement to Mr. Humbert to "[s]top" includes an implied assertion that Mr. Humbert was attacking Ms. Humbert-Williams, the child did not intend it to be an assertion. That is, the child did not intend to "say that something is so, e.g., that an event happened or that a condition existed." *State v. Carter*, 72 Ohio St. 3d 545, 549 (1995) (quoting 2 McCormick, *Evidence*, Section 246, at 98 (4 Ed. 1992)). Thus, the child's utterance is not a "statement" as defined by Evidence Rule 801(A) because it was not intended as an assertion. Therefore, the utterance is excluded from the definition of hearsay. The trial court correctly admitted Ms. Humbert-Williams's testimony as it did not include hearsay. Mr. Humbert's second assignment of error is overruled.

## CONCLUSION

**{¶16}** Mr. Humbert's first assignment of error is overruled because his convictions are supported by sufficient evidence and are not against the manifest weight of the evidence. His second assignment of error is overruled because his nephew's statement, offered through Ms. Humbert-Williams's testimony, is not hearsay. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT


BELFANCE, J.
CONCURS IN JUDGMENT ONLY.

CARR, P. J.
CONCURRING IN JUDGMENT ONLY.

{¶17} I concur in judgment only in regard to the six-year-old child's alleged hearsay statements. Assuming without deciding that this testimony was hearsay, I would find it to be harmless error. *See State v. Daniels*, 9th Dist. No. 03CA008261, 2004-Ohio-828, ¶ 34.


APPEARANCES:

NOAH C. MUNYER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.