**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Tracy S. BARCELONA,
Defendant-Appellant.**

**No. 86–2160.**

United States Court of Appeals,
Fifth Circuit.

March 27, 1987.

Joel Androphy, David H. Berg, Houston, Tex., for defendant-appellant.

James R. Gough, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before THORNBERRY, GEE, and REAVLEY, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Tracy S. Barcelona appeals the district court's denial of his motions to dismiss the indictment against him based on the separate grounds of double jeopardy and prosecutorial misconduct. We affirm the district court's denial of the double jeopardy motion but lack jurisdiction to review the district court's denial of the prosecutorial misconduct motion.

The United States charged Barcelona in an eight count indictment. Counts one through seven charged Barcelona with embezzlement and willful misapplication of bank funds. Count eight charged that Barcelona executed a scheme and artifice to defraud a federally insured financial institution.

On September 5, 1984, Barcelona used a $22,000 check to purchase two certificates of deposit at Guaranty Federal Savings & Loan for Pamela Mendiola. Allegedly without authorization, Barcelona took $2,000 for his personal use and turned over two $10,000 certificates of deposit to Mendiola. On October 26, 1984, Barcelona transferred money from Mendiola's savings account at one branch to a new account at a different branch. Allegedly without authorization, Barcelona took $7000 from the new account deposit for his own use.

Guaranty Federal recorded that transaction on a multi-part form. The bank retained a carbon copy of the form (the "bank copy"), and Barcelona received the original. The government alleges that after making the deposit Barcelona altered the original in two ways: by changing the "Less Cash" line from $7000 to $9000 and by adding the phrase "91 Day CD" to that line to indicate that he had used the $9000 to purchase another certificate of deposit. Barcelona then gave the altered customer original to Mendiola. The government argues that Barcelona altered the customer original to hide the $2000 that he took on September 5, 1984, and the $7000 that he took from the new account deposit. In any case, the customer original of the new account deposit reflects those changes, which are not found on the bank copy.

Barcelona's counsel planned a two-fold defense: (1) that Barcelona was legally insane at the time of the offense; and (2) that he lacked the specific intent to commit the alleged crimes. He planned to argue that because Barcelona had done everything in the open, he wanted to be caught. Barcelona's counsel intended to argue from that premise that Barcelona must have been insane. During discovery, the government turned over a photocopy of the

customer original of the new account deposit. The photocopy did not reflect that the alterations were made with a different pen. In other words, the photocopy did not reveal that Barcelona deceptively altered the customer original, which he gave Mendiola. Moreover, the government never gave Barcelona's counsel even a photocopy of the bank copy of the new account deposit. Comparison of the bank copy with the customer original also would have demonstrated the alteration and hence Barcelona's deception. Had the government provided either the customer original itself (as opposed to a photocopy) or even a photocopy of the bank copy, then Barcelona's counsel would have realized that his planned defense did not fit the facts.

At trial, defense counsel based its opening argument upon the defense that Barcelona's scheme was so transparent that Barcelona had to have been insane at the time. According to defense counsel, Barcelona never tried to hide the alleged thefts and that supported the argument that he was insane. During its case, the government introduced the customer original and also the bank copy of the new account deposit. Obviously altered, the customer original discredited any defense based on a lack of deception. In addition, the discrepancies between the bank copy and the altered customer original also demonstrated that Barcelona had altered the customer original after it was detached from the bank copy. Surprised by the introduction of the evidence that he had never seen, Barcelona's counsel moved for a mistrial, which the court granted.

The government admits that it had a continuing duty of disclosure and should have called the alterations to defense counsel's attention before the trial began. The Assistant United States Attorney stated that the omission had been inadvertent and that he had either been unaware of or not appreciated the significance of the variance between the customer original and the bank copy. The trial court accepted that explanation but granted a mistrial because the surprise had already prejudiced Barcelona's defense at the first trial.

Three days later, Barcelona filed motions to bar any retrial on the grounds of double jeopardy and prosecutorial misconduct. After a hearing the trial court denied both motions to dismiss.

### Double Jeopardy

■ A defendant may not ordinarily appeal the denial of his motion to dismiss because that denial is not a final decision. 28 U.S.C. § 1291; *see United States v. McLean,* 738 F.2d 655, 660 n. 10 (5th Cir. 1984), *cert. denied,* 470 U.S. 1050, 105 S.Ct. 1748, 84 L.Ed.2d 813 (1985). Courts of appeals do have jurisdiction, however, to review the denial of a motion to dismiss based on double jeopardy grounds. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 2040–41, 52 L.Ed.2d 651 (1977). "[S]uch orders fall within the 'small class of cases' that *Cohen* has placed beyond the confines of the final-judgment rule." *Id.* 97 S.Ct. at 2040 (footnote omitted); *see Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949).

■ As a general rule the double jeopardy clause does not bar retrial after a court grants the defendant's request for a mistrial. In *Oregon v. Kennedy,* the Supreme Court clarified the exception to that general rule:

> Prosecutorial misconduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion ... does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause.... Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

456 U.S. 667, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982) (citations omitted). The test "calls for the court to make a finding of fact. Inferring the existence or nonexistence of intent from objective facts and circumstances is a familiar process in our

criminal justice system." *Id.* We must affirm the trial court's factual findings unless they are clearly erroneous. *Robinson v. Wade,* 686 F.2d 298, 309 (5th Cir.1982).

■ Barcelona points to the following circumstantial evidence to prove that the prosecution intended to provoke a mistrial: "[Assistant U.S. Attorney] Ratliff had been assigned the case only ten days before trial. He began talking to witnesses less than one week prior to trial. Dr. Nottingham, the Government's psychiatrist, had only seen the Appellant on one occasion. Dr. Altschuler[, the defense psychiatrist,] had seen Appellant seventeen times." Barcelona argues both that the government's evidence completely destroyed his defense and that the government needed more time to prepare for trial. The government readily admits that before trial it should have produced the documents that Barcelona's counsel eventually received; nevertheless, "simple negligence will not support invocation of the double jeopardy clause." *Robinson,* 686 F.2d at 309. The trial court's findings are not clearly erroneous.

### *Prosecutorial Misconduct*

■ Barcelona also argues that the government's misconduct justifies dismissing the indictment on due process grounds. We do not reach the merits of this claim because the trial court's denial of Barcelona's motion to dismiss on the grounds of prosecutorial misconduct is not a final decision. *See United States v. Wright,* 622 F.2d 792, 793–94 (5th Cir.), *cert. denied,* 449 U.S. 961, 101 S.Ct. 376, 66 L.Ed.2d 229 (1980).

The facts in *Wright* closely parallel the facts here. In *Wright,* the first trial resulted in a hung jury, and Wright requested a mistrial. Before the second trial began Wright moved to dismiss the indictment on the grounds of both double jeopardy and prosecutorial misconduct. Wright argued that prosecutorial misconduct, including nondisclosure of certain pieces of evidence, justified dismissing the indictment both because that conduct provoked him to request a mistrial (and hence double jeopardy barred a retrial) and because it

denied him a fair trial. In *Wright,* we stated that, "Wright's motion to dismiss the indictment and the issue of prosecutorial overreaching, *inasmuch as it relates to the double jeopardy question,* are reviewable by this Court." *Id.* at 793 (emphasis added) (footnote omitted). We also held that "the District Court's failure to dismiss the indictment *as a direct result* of prosecutorial overreaching, separate and apart from the double jeopardy claim," is not appealable because, "[n]one of Wright's specific claims of governmental misconduct fall within the *Cohen* 'collateral' order exception...." *Id.* at 794 (emphasis in original). *Wright* controls this appeal.

We affirm the district court's denial of Barcelona's double jeopardy motion. Lacking jurisdiction, we do not reach Barcelona's prosecutorial misconduct argument and therefore dismiss that part of his appeal.

AFFIRMED IN PART AND DISMISSED IN PART.