**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Danny Michael WEEKS, Defendant–Appellant.**

No. 88–2612.

United States Court of Appeals, Fifth Circuit.

March 30, 1989.

H. Michael Sokolo, Asst. Federal Public Defender, Roland E. Dahlin, II, Federal Public Defender, Majorie A. Meyers, Asst. Federal Public Defender, Houston, Tex., for defendant-appellant.

Paula Offenhauser, Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before GARZA, JOLLY, and JONES, Circuit Judges.

GARZA, Circuit Judge:

In October of 1986, Danny Michael Weeks and James Lee Colvin were indicted in the United States District Court for the Southern District of Texas for kidnapping Linda M. Mayeaux and Karyn Leslie Laccheo in violation of federal law. They were also indicted on various federal weapons charges. Three days into appellant Weeks's trial, Judge Hittner declared a mistrial without prejudice on the ground that the government had "fatally tainted" the proceeding by conducting, and then aborting, a mid-trial investigation of defense counsel for alleged witness tampering and obstruction of justice. Appellant raises two questions on appeal: 1) whether the double jeopardy clause of the fifth amendment requires dismissal with prejudice of the indictment against him; and 2) whether the government's conduct during trial was outrageous to such an extent as to violate defendant's fifth amendment right to due process. We respond to both of these questions in the negative. For the reasons stated below, therefore, we AFFIRM.

## Background

The government tried James Lee Colvin and Danny Michael Weeks separately for the crimes alleged in their indictment. Colvin was tried first and convicted on August 14, 1987. Appellant Weeks proceeded to trial on June 14, 1988. He was represented by Ms. Marjorie Meyers, an Assistant Public Defender. On June 13, 1988, FBI Special Agent David Lemoine spoke with Colvin at the Harris County Jail. During that conversation, which Agent Lemoine recorded, Colvin alleged that Ms. Meyers had visited him that day at the jail and had attempted to dissuade him from testifying for the government in the prosecution of appellant Weeks. Ms. Meyers allegedly told Colvin that it might be "bad for his health" to testify against Weeks. Lemoine relayed Colvin's allegation to Assistant United States Attorney Jay Karahan.

The U.S. Attorney's Office and the FBI thereafter conducted two polygraph examinations of Colvin. The first proved "inconclusive" and the second indicated some deception with regard to several pertinent questions. The government then advised the district court on June 14, 1988 that it planned to undertake an investigation into the allegations of possible obstruction of justice by Assistant Public Defender Meyers. The court expressed its distaste for such an investigation under the circumstances. Judge Hittner noted his belief, however, that the decision to go forward was likely within the exclusive authority of the executive branch and that he would be powerless to stop it.

The government arranged for Ms. Meyers to speak with Colvin on June 15, 1988. Colvin was to wear a recording device during the meeting. He was instructed to bring up the subject of his testimony, to listen to whatever Ms. Meyers had to say in response, and then to leave the room. The government's plans for recording the conversation went awry, however, when the FBI was unable to obtain the recording equipment in time for the meeting. Thus, according to the government, the conversation was never recorded, electronically or otherwise.

At approximately 11:15 a.m. on June 16, 1988, three days into the trial of appellant Weeks, Colvin called the Public Defender's office to inform Ms. Meyers that the government was, in Colvin's words, attempting to "set her up." During an *in camera* meeting that afternoon, the U.S. Attorney's office conceded that it had been conducting an investigation into allegations of obstruction of justice by Ms. Meyers, that it had been able neither to prove nor disprove the allegations, and that the investigation had been closed. Appellant moved for a mistrial on the basis of prosecutorial misconduct and intimidation of defense counsel during an on-going trial.

The district court granted the motion without prejudice. It found, as a matter of fact, that the prosecution had not investigated Ms. Meyers for the purpose, or with the intention, of provoking the defendant to move for a mistrial. The court also found that the government did not act in bad faith for the purpose of harassing the ac-

cused by successive prosecutions or in order to provide a more favorable opportunity to achieve a conviction. Appellant disputes these findings and argues that the double jeopardy and due process clauses of the fifth amendment bar his retrial.

## Discussion

■■■ Our standard of review requires that we affirm the factual findings of the district court unless they are clearly erroneous. *Robinson v. Wade,* 686 F.2d 298, 309 (5th Cir.1982). We observe at the outset that ordinarily the denial of a defendant's motion to dismiss with prejudice is not an appealable final decision. *United States v. Barcelona,* 814 F.2d 165 (5th Cir. 1987), *cert. denied,* ⸺ U.S. ⸺, 107 S.Ct. 3268, 97 L.Ed.2d 767 (1987). Courts of appeal do have jurisdiction, however, to review the denial of a motion to dismiss based on the double jeopardy clause. *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).

## I.

■■■ One of the principal objectives of the double jeopardy clause of the fifth amendment is the protection of the criminal defendant's right to have his case finally decided before the first jury impanelled to try him. *Oregon v. Kennedy,* 456 U.S. 667, 673, 102 S.Ct. 2083, 2088, 72 L.Ed.2d 416 (1982). Ordinarily, however, where the first prosecution has terminated on the defendant's own motion for a mistrial, the government is not barred from putting the defendant to trial again. *See United States v. Tateo,* 377 U.S. 463, 467, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 (1964) (if defendant had successfully requested mistrial himself, the government would not have been barred from retrying him). Yet, even where the defendant moves for a mistrial, "there is a narrow exception to the rule that the Double Jeopardy Clause is no bar to retrial." *Kennedy,* 456 U.S. at 673, 102 S.Ct. at 2088.

The prosecution may not engage in misconduct intended to provoke mistrial requests. In *Oregon v. Kennedy, supra,* the Supreme Court held that "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." *Id.* at 676, 102 S.Ct. at 2089.

Appellant asserts that the facts of this case raise an inference of governmental intent to provoke a mistrial request. Specifically, appellant points to evidence in the record that Ms. Mayeaux occasionally confused the names of the codefendants, that her testimony revealed inconsistencies about which of her abductors had obtained her gun from the trunk of her car, and that the government was unable to lay the proper foundation for admitting documentary evidence of the gun's serial number. In short, the prosecution was fairing badly enough, according to appellant, that one can infer from the evidence an understandable inclination on the part of the government to abort the proceedings and begin anew.

We are not convinced that these facts support the allegation that the government conducted an investigation of Ms. Meyers for the purpose of inducing the defense to seek a mistrial. As a preliminary matter, we observe that Colvin made his allegations on June 13, 1986, the day before the trial began and before Ms. Mayeaux had given the testimony upon which appellant bases his assertion that the government's case was going badly. In addition, the government vigorously resisted appellant's motion for a mistrial once the conduct of the investigation had come to light.

Moreover, to the extent that we are capable of judging such matters from a cold record, it appears that the prosecution's case was proceeding quite satisfactorily. The inconsistencies mentioned by appellant suggest minor glitches in the otherwise detailed, powerful, and apparently credible testimony of the victims in this case. After presiding over three days of trial and hearing the testimony of the government's witnesses, Judge Hittner was subsequently unconvinced that the government had deliberately sought to "goad" the appellant into seeking a mistrial. This record strongly

supports Judge Hittner's determination. We decline to find that determination clearly erroneous.[1]

## II.

Appellant also seeks a dismissal of the indictment under the due process clause of the fifth amendment, alleging that the conduct of the prosecution in this case was so outrageous as to shock the conscience and to violate principles of fundamental fairness. We have held that the motion to dismiss an indictment on the basis of prosecutorial overreaching, inasmuch as it relates to the double jeopardy question, is reviewable by this court. *Barcelona*, 814 F.2d at 168 (citing *United States v. Wright*, 622 F.2d 792, 793 (5th Cir.1980), *cert. denied*, 449 U.S. 961, 101 S.Ct. 376, 66 L.Ed.2d 229 (1980)). However, in the *Wright* case, as well as in *Barcelona*, we also held that "the district court's failure to dismiss the indictment *as a direct result* of prosecutorial overreaching, separate and apart from the double jeopardy claim," is not reviewable on interlocutory appeal. *Wright*, 622 F.2d at 794. [Emphasis in original].

In *Wright*, the appellant moved to dismiss the indictment on double jeopardy grounds after the district court declared a mistrial due to a deadlocked jury. Alternatively, appellant Wright requested dismissal of the indictment directly because of alleged prosecutorial misconduct that he argued had denied him a fair trial.

We concluded that Wright's denial of prosecutorial overreaching claim, standing alone, was neither a final order of the district court nor a collateral order appealable under 28 U.S.C. § 1291. We held that the trial court's disposition of Wright's specific claims of governmental misconduct

was not a collateral order because those claims would "either be resolved or cured at the upcoming trial and effectively reviewed by us on appeal from any [future] conviction." *Id.* at 794.

The rationale of our holding in *Wright* applies with even greater force here. In *Wright*, the case had been submitted to the jury notwithstanding the allegations of prosecutorial misconduct and the possibility that the evidence had thereby been tainted. Nevertheless, we concluded that Wright's new trial, before a different jury, would resolve or cure his claims of previous governmental misconduct while preserving them for any possible future appeal, at which time they would become final and reviewable. That reasoning applies here, *a fortiori*, where appellant Weeks's case was never submitted to the first jury.

The *Wright* case controls our decision in this one. Appellant's claim of governmental misconduct is not appealable at this time. "Any other rule would encourage criminal defendants to seek review of, or assert frivolous double jeopardy claims in order to bring more serious, but otherwise nonappealable questions to the attention of the courts of appeals prior to conviction and sentence." *Id.* (quoting *Abney v. United States*, 431 U.S. 651, 662–63, 97 S.Ct. 2034, 2042, 52 L.Ed.2d 651 (1977).

For the foregoing reasons, we AFFIRM the district court's denial of appellant's motion to dismiss the indictment with prejudice.

---

**1.** Judge Hittner found the government's decision to conduct a mid-trial investigation of a respected defense attorney ill-advised, based as it was upon the statements of a convicted felon who had betrayed "some deception" during his polygraph examination and whose penchant for fabrication was well known to the government. Our holding, that the double jeopardy clause does not bar re-trial of the appellant, is based solely upon our determination that this record

does not support overturning the trial court's findings as clearly erroneous. We recognize that the government has a duty to investigate allegations of witness tampering and obstruction of justice. However, we agree with Judge Hittner that once it became clear in this case that Colvin could not pass a polygraph examination, the decision to continue the investigation was ill-advised.