**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Danny Michael WEEKS,**
**Defendant–Appellant.**

**No. 89–2888**
**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Nov. 29, 1990.

Roland E. Dahlin, II, Federal Public Defender, Marjorie A. Meyers, Houston, Tex., for defendant-appellant.

Paula C. Offenhauser, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before JOLLY, HIGGINBOTHAM and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Defendant-appellant Danny Michael Weeks was convicted after a jury trial of two counts of kidnapping, two counts of interstate transportation of a stolen vehicle, and one count each of carrying a

firearm during a crime of violence and possessing a firearm as a convicted felon. The district court sentenced Weeks to prison for two consecutive life terms followed by 17 years, plus a fine of $1,250,000. On appeal, Weeks alleges numerous errors by the trial court and the prosecutors. We affirm.

This case has come to us before on appeal. In *United States v. Weeks*, 870 F.2d 267 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 92, 107 L.Ed.2d 57 (1989), we upheld against a double jeopardy challenge the district court's decision to grant Weeks' motion for a mistrial without prejudice to the government's right to reprosecute. The background and procedural history of this prosecution are adequately described in that opinion. We now examine here the seven issues on which Weeks seeks reversal of his convictions following remand and retrial.

## I.

### SHACKLES

Weeks first contends that the district court abused its discretion in requiring him to stand trial confined by shackles. We agree with Weeks that "[a]n accused person is presumed innocent and is, therefore, entitled to the indicia of innocence in a jury trial." *United States v. Theriault*, 531 F.2d 281, 284 (5th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 262, 50 L.Ed.2d 182 (1976). This entitlement, however, "must be balanced against the court's obligation to protect the court and its processes, and to attend to the safety and security of those in the courtroom." *United States v. Nicholson*, 846 F.2d 277, 279 (5th Cir.1988). Moreover, "[t]his balancing of competing interests is entrusted to the sound discretion of the trial court." *Id.; see also Theriault*, 531 F.2d at 284. The record indicates that the court did not abuse its discretion in requiring Weeks to be shackled.

As to the necessity of restraining Weeks in the first place, the district court displayed awareness that Weeks had escaped from the Louisiana state penitentiary at Angola and that the crimes charged at trial grew out of this escape. The court also relied on the testimony of two United States Marshals. According to Deputy Bright, the Marshal's Service knew that Weeks had planned two escapes from the local county jail before his first trial. According to Deputy Riley, the Marshal's Service twice received notification from the county jail that Weeks was planning to escape prior to his second trial. Weeks attempts to discount these concerns by pointing out that he had been allowed to appear at pretrial matters unchained. We do not see the supposed inconsistency: neither a jury nor large numbers of spectators are present at pretrial proceedings.

Weeks also claims that the court's reliance on the Marshal's Service was an impermissible delegation of discretion in violation of *United States v. Samuel*, 431 F.2d 610, 615 (4th Cir.1970). Although the Fourth Circuit did hold that a district judge may not delegate his discretion to the Marshal, it went on to say that "he may rely heavily on the Marshal's advice as to what may be required since it is the Marshal who has the experience in the keeping of prisoners and who must provide the guards and bear the major responsibility if untoward incidents occur." *Id.* Weeks attempts to show an impermissible delegation of discretion by quoting the court's statement that it would "leave Court security to the Marshal's Service." This quotation is entirely misleading. It was uttered in response to a request by counsel at voir dire that the marshals "back up;" it had nothing to do with shackling. The court made an extensive record on the shackling issue, even allowing defense counsel to cross-examine the marshals about Weeks' alleged escape plans.

Finally, the court took steps to minimize any potential for prejudice from the shackles. File-type boxes were placed in front of the desk at which Weeks sat during trial, preventing the jury from seeing the shackles but otherwise not blocking its view of him. Before and after Weeks displayed his forearms to the jury, the jury was excused while Weeks was moved around the courtroom. The court noted that these procedures had successfully hidden the shackles

from the jury at co-defendant James ("Jimmy") Colvin's trial—until Colvin had deliberately lifted his legs to show the jurors. With that in mind, the court suggested to counsel before the first trial that she direct Weeks not to do the same thing if he wished to keep the jury ignorant of the shackles. Given its reasonable reliance on the Marshal Service's experience with courtroom security and its efforts to limit any prejudice, the district court did not abuse its discretion in requiring Weeks to be shackled at trial.

## II.

## HEARSAY

■■■ Weeks next claims that the district court erred in allowing an assistant warden of the Angola penitentary to testify that Weeks's nickname in prison was "Gato." Because kidnap victims Linda Mayeaux and Karyn Laccheo both testified that their abductors used the names "Jimmy" and "Gato," this testimony helped to establish the identity of Weeks as one of the two abductors of the women. Weeks argues that the court should have excluded the warden's testimony as hearsay not falling within any exception. *See* Fed.R.Evid. 802. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted;" a statement is "an oral or written assertion." *Id.* 801(a) and (c). We conclude that the warden's testimony reported non-assertive oral conduct and was therefore not hearsay.

The following exchanges took place between the witness and defense counsel Meyers and prosecutor Woodward (emphasis added):

BY MS. MEYERS:

Q. Have you ever heard, personally heard anyone call Danny Michael Weeks by a nickname?

A. I have heard other inmates. That's my personal knowledge of the inmates, and other security people call him by a nickname.

Q. Personally on the yard or have you heard them use it or just told you that was his name?

A. I've heard an officer before call him by that name.

. . . . .

Q. So the officer *told* you that name but didn't call Mr. Weeks that name and have him answer to that name?

A. Didn't have him answer to it.

. . . . .

Q. And the only way you have heard this name Gato is some guards used that name with reference to Mr. Weeks; is that correct?

A. I've heard a guard *use* it.

. . . . .

BY MR. WOODWARD:

Q. The guard is not the only person you've heard the name Gato from in regard to Danny Michael Weeks; isn't that true?

A. I have heard other inmates *use* it.

Had the interrogation ceased after the third question and answer ("So the officer told you ...?"), it is likely that the jury, in order to believe that Weeks' nickname was Gato, would have had to accept as true the out-of-court assertion of an unidentified "officer." The questioning continued, however, and the warden elaborated on his previously vague answer. He stated that he had heard both a guard and other inmates "use" the nickname. The jury could infer that the warden had personal knowledge of the nickname, knowledge acquired as people often acquire knowledge of names—by hearing other people "use" them in a non-assertive manner.

■■■ We review a district court's evidentiary rulings for abuse of discretion. *LeBoeuf v. K–Mart Corp.*, 888 F.2d 330, 333 (5th Cir.1989). In the present context, this review is focused on the question whether the reported oral conduct of a guard and other inmates conveyed assertions. According to the drafters of the Federal Rules of Evidence, the "key" to the definition of "statement" is that "nothing is an assertion unless intended to be one." Moreover, "[t]he rule is so worded as to

place the burden upon the party claiming that the intention existed; ambiguous and doubtful cases will be resolved against him and in favor of admissibility." Fed.R.Evid. 801(a) advisory committee's note. The district court implicitly ruled that Weeks did not meet his burden. Given our analysis above, the court did not abuse its discretion by admitting the testimony.

## III.

## PARTISAN STANCE

Weeks next argues that the district court committed reversible error by taking a partisan stance in favor of the government when the court questioned Linda Mayeaux about her doubts as to the identity of Weeks as one of her kidnappers. The following exchange took place during defense counsel's cross-examination of Mayeaux:

Q. At that time you identified Mr. Weeks as the other individual; is that correct?

A. Correct.

THE COURT: Do you have any doubt about that? Do you have any doubt about the identification? Mrs. Mayeaux, do you have any doubt about it?

THE WITNESS: No, sir. No, sir.

THE COURT: No doubt at all.

THE WITNESS: No, sir.

THE COURT: About either Mr. Colvin or Mr. Weeks?

THE WITNESS: No.

THE COURT: No doubt.

THE WITNESS: No.

THE COURT: No matter what they were wearing then or now, no doubt?

THE WITNESS: No.

THE COURT: All right.

We address this point in light of two propositions: (1) a district judge has the authority to "comment on the evidence [and] question witnesses and elicit facts not yet adduced or clarify those previously presented;" and (2) "[o]nly when the judge's conduct strays from neutrality is the defendant thereby denied a constitutionally fair trial." *United States v. Williams*, 809 F.2d 1072, 1087 (5th Cir.) (quoting *Moore v.*

*United States*, 598 F.2d 439, 442 (5th Cir. 1979)), *cert. denied*, 484 U.S. 896, 108 S.Ct. 228, 98 L.Ed.2d 187; 484 U.S. 913, 108 S.Ct. 259, 98 L.Ed.2d 216; 484 U.S. 987, 108 S.Ct. 506, 98 L.Ed.2d 504 (1987).

Weeks compares his case to two cases in which the courts of appeals granted new trials because of judicial intervention in the questioning of witnesses. In *United States v. Allsup*, 566 F.2d 68 (9th Cir.1977), the district court took over cross-examination of a government witness who had admitted that she had only moments before identified the wrong photograph as her assailant. The court asked the witness why she had made a mistake; the witness answered: "Well, when I first glanced at [the photographs]—I don't know, I'm scared and my mind just went blank." *Id.* at 72. The court of appeals concluded that "[t]he implication was strong that [the defendant] had frightened the witness, not simply that she was suffering from a common case of nervousness from being in a courtroom." *Id.* at 72–73. Thus, the total impact of the intervention "was to destroy the effect of telling cross-examination, to rehabilitate the witness, and to give her testimony an extra and a potentially prejudicial persuasiveness." *Id.* at 73.

*Allsup* is distinguishable from this case. This record reveals no "telling" cross-examination, and if Mayeaux needed any rehabilitating, she satisfied that need herself. When defense counsel asked Mayeaux if she had identified Weeks in the courtroom from his photographs in the newspaper, she replied: "I identified him by seeing him up close for eight-and-a-half hours." The exchange between the district court and Mayeaux produced no inflammatory or prejudicial remarks. Finally, the *Allsup* court remanded for a new trial not only for the improper intervention of the trial court, but also for inadequacy of voir dire on the question of insanity and the failure to excuse two jurors for cause.

Weeks also proffers *United States v. Bland*, 697 F.2d 262 (8th Cir.1983), as requiring reversal. In that case, however, the trial court interrupted defense counsel's cross-examination of two government

witnesses and took over cross-examination of two defense witnesses. All of the judicial interrogation tended "to emphasize and accentuate the prosecution's case." *Id.* at 265. Upon return of the verdict, the judge informed the jury that he also believed the defendant to be guilty. This admittedly partisan stance, compounded by other evidence in the record, is a far cry from the single incident of partisanship alleged to have deprived Weeks of a fair trial.

The district court's final instructions to the jury also support the conclusion that the court maintained neutrality. *See Williams*, 809 F.2d at 1088. The court instructed the jury as follows:

> During the course of the trial I occasionally ask questions of a witness in regard to bring out the facts not then fully discovered in the testimony. Once again, do not assume that I hold any opinion on the matters to which my questions may have related. Remember at all times you as jurors are at liberty to disregard all comments of the Court in arriving at your own findings as to the facts.

Given this admonition, coming after a single exercise of the district court's authority to question a witness and clarify facts previously presented, the district court did not overstep the bounds of acceptable judicial conduct.

## IV.

### UPPER BODY PHOTOGRAPH

■ Weeks next argues that the district court erred in admitting into evidence an upper body photograph of Weeks that showed "devil tattoos and a massive jagged scar." In her testimony for the government, kidnap victim Karyn Laccheo recalled seeing a panther tattoo and a snake tattoo on Weeks' left and right arms respectively. The photograph in question was relevant to show that Weeks did indeed have a panther tattoo on his left arm; however, it was also cumulative because Weeks was allowed to bare his arm before the jury. Accordingly, Weeks claims that the court should have excluded the photograph under Fed.R.Evid. 403, which allows

the court to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." We review the court's decision to admit the photograph for abuse of discretion. *United States v. Cochran*, 697 F.2d 600, 608 (5th Cir.1983). In this case, although we might not have admitted this photograph because it was cumulative of Weeks's physical demonstration, we do not find the photograph so inflammatory as to have significantly prejudiced the jury. The court did not abuse its discretion.

## V.

### FIREARM DISPLAY

■ ·Weeks next contends that the district court erred in allowing the government to display a firearm to the jury even though it was not connected to Weeks. We agree with the government that the court did not abuse its discretion in permitting the display. Two of the six crimes charged in the indictment involved a firearm. *See* 18 U.S.C. § 924(c)(1) (use of a firearm in relation to a crime of violence); 18 U.S.C. App. II, § 1202(a)(1) (now repealed) (possession of a firearm by a convicted felon). Although the revolver was not the actual firearm used by the defendant, it belonged to a government firearms expert and was identified by kidnap victim Mayeaux as looking similar to the weapon that Weeks took from the trunk of her car and used during the offenses. The court did not admit the firearm into evidence—which would have allowed the jury to examine it during deliberations—but allowed it to be displayed for "demonstrative purposes only." Finally, the court instructed the jury that the revolver they had seen was merely a model similar to the one used in the crime. Weeks also claims that the government displayed the weapon in an inflammatory manner that unfairly prejudiced him. At trial, defense counsel objected because the prosecutor "clicked [the gun] and tried it again, emphasizing the use of it. It inflames the jury panel. I would object to him trying to point the gun and play with the handle, and he clicks it so

it's that much more intimidating." The prosecutor disputed this characterization, stating that "[t]he gun's chamber was open. The barrel was open, Your Honor. As I walked toward the witness, the barrel closed." The court responded: "Next time keep it closed." From the cold record, we are unable to determine what actually happened, but the district court evidently accepted the government's version. The firearm display does not constitute reversible error.

## VI.

### GOVERNMENT MISCONDUCT (FIRST TRIAL)

■ Weeks next claims that the charges against him must be dismissed because government misconduct prejudiced his defense in violation of the due process clause. During the first trial, the government investigated Weeks' defense counsel for witness tampering and obstruction of justice. *See generally United States v. Weeks*, 870 F.2d 267, 268 (5th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 92, 107 L.Ed.2d 57 (1989) (*Weeks I*). When the investigation came to light, the district court granted a mistrial without prejudice to the refiling of charges. Weeks now seeks dismissal with prejudice, claiming that his is "a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes." *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973).

We reject this claim. Although the district court found the government's investigation of defense counsel "most questionable conduct" and our court characterized it as "ill-advised," *Weeks I*, 870 F.2d at 270 n. 1, the investigation did not rise to the level of "outrageous" or "shocking to the universal sense of justice," *Russell*, 411 U.S. at 432, 93 S.Ct. at 1643. In addition, a defendant must show actual prejudice to his ability to receive a fair trial before charges will be dismissed. *See United States v. Morrison*, 449 U.S. 361, 365–66, 101 S.Ct. 665, 668–69, 66 L.Ed.2d 564 (1981)

(law enforcement interference with right to counsel); *United States v. McKenzie*, 678 F.2d 629, 631 (5th Cir.) (prosecutorial misconduct in procuring indictment), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 450, 74 L.Ed.2d 604 (1982). Weeks alleges prejudice because the government "took advantage of its misconduct in the first trial to remedy its case in the second trial." Our court previously upheld the district court's finding that the government did not intentionally provoke a mistrial, stating: "it appears that the prosecution's case was proceeding quite satisfactorily. The inconsistencies mentioned by appellant suggest minor glitches in the otherwise detailed, powerful, and apparently credible testimony of the victims in this case." *Weeks I*, 870 F.2d at 269. This suffices to rebut Weeks' latest allegations.

## VII.

### GOVERNMENT MISCONDUCT (SECOND TRIAL)

■ Weeks finally claims that his convictions must be reversed because of the government's continued misconduct at his second trial. He alleges that the prosecutors repeatedly denigrated him and his defense counsel, alluded to evidence not adduced at trial, and played upon the passions of the jurors.

Our review of these allegations, and the context in which they arose at trial, reveals an unconnected jumble of minor infractions by the prosecution. Our standard of review is exacting. The court must "consider whether the prosecutor's comments deprived defendants of a fair trial in light of ... the magnitude of the prejudicial effect of the statements, the efficacy of any cautionary instructions, and the strength of the evidence of defendant's guilt." *United States v. Jones*, 839 F.2d 1041, 1050 (5th Cir.), *cert. denied*, 486 U.S. 1024, 108 S.Ct. 1999, 100 L.Ed.2d 230 (1988); *see also United States v. Lowenberg*, 853 F.2d 295, 302 (5th Cir.1988), *cert. denied*, 489 U.S. 1032, 109 S.Ct. 1170, 103 L.Ed.2d 228 (1989). Cautionary instructions were promptly given in response to defense

counsel's objections to the government's remarks. Such instructions, plus the strength of the government's case as we alluded to it in *Weeks I,* 870 F.2d at 269, convince us that any errors by the government were harmless.

For the foregoing reasons, we affirm the judgment of the district court and sustain Weeks' convictions.

AFFIRMED.